**Dr. Dana HAYS, Plaintiff,**

**v.**

**V.P. ELLIS, in his individual and official capacities, Doug Grove, in his individual and official capacities, B. Curnow in his individual and official capacities, K. Steinman, in his individual and official capacities, City of Boulder, and Jane and John Does, whose present identities are not currently known, Defendants.**

**No. CIV.A.01–K–2316.**

United States District Court,
D. Colorado.

Aug. 23, 2004.

John W. McKendree, John W. McKendree Law Offices, Denver, CO, for Plaintiff.

Andrew David Ringel, Andrew James Carafelli, Hall & Evans, Denver, CO, Josh Adam Marks, Berg, Hill, Greenleaf & Ruscutti, LLP, Boulder, CO, for Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KANE, District Judge.

This excessive force/malicious prosecution action arises from a traffic stop of Plaintiff by members of the Boulder Police Department that culminated in Plaintiff being "taken to the ground" and arrested on a charge of obstructing the police. Plaintiff filed suit, asserting claims under 42 U.S.C. § 1983 against the individual officers and the City of Boulder for assault and battery, malicious prosecution, abuse of process, and conspiracy in violation of

his rights under the United States Constitution.

Defendants Grove, Ellis and Curnow[1] moved for summary judgment on all of Plaintiff's claims, arguing Plaintiff's malicious prosecution claim cannot stand because the chain of causation was broken when a court ruled that there was probable cause to proceed on the charges against Plaintiff; that the individual defendant officers are entitled to a grant of qualified immunity with respect to the excessive force claim; and that Plaintiff's municipal liability and conspiracy claims fail for a lack of sufficient evidence under applicable summary judgment standards.

 Plaintiff confesses the Motion with respect to the municipal liability claims against the City of Boulder and the claims for malicious prosecution against the police officers in their individual capacities, and Defendants' Motion is GRANTED as to those claims.[2] The Motion is DENIED as to Plaintiff's remaining claims against the individual police officers under 42 U.S.C. §§ 1983 and 1985 for excessive force and conspiracy.

## DISCUSSION.

Plaintiff Dana Hays, a physician, claims Boulder Police Officers Ellis, Grove and Curnow violated 42 U.S.C. §§ 1983 and 1985 by using excessive force in the course of arresting him and by conspiring beforehand to assault him with no provocation and then cover up their wrongdoing. The defendant officers move for summary judgment, claiming they are entitled to qualified immunity or judgment as a matter of law on each of these claims.

### 1. Excessive Force Claim— Qualified Immunity.

 "Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir.2001) (internal quotation omitted). Accordingly, if the defense of qualified immunity is asserted, it should be resolved "at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Once the defense is asserted, the plaintiff bears the burden of showing qualified immunity does not exist. *DeSpain*, 264 F.3d at 971.

 Whether a defendant has qualified immunity is a question of law, *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), to be decided in two steps. *Saucier*, 121 S.Ct. at 2155; *DeSpain*, 264 F.3d at 971. The initial inquiry is whether the defendant's conduct—under a Rule 12(b)(6) or Rule 56 standard, depending on the stage of the proceedings at which the defense is

1. Plaintiff voluntarily "dismissed his claims against K. Steinman in his individual ... capacit[y] during the discovery phase of this case," *see* Response Br. at 15, and Officer Steinman is not a party to the Motion.

2. Because a suit against a municipal employee in his "official capacity" is the same as a suit against the city, the dismissal of the City of Boulder requires the dismissal of the defendant officers in this case named in their "official" capacities. *See Drake v. City and County of Denver*, 953 F.Supp. 1150, 1156 n. 5 (D.Colo.1997)(citing *Doe v. Douglas County Sch. Dist. RE–1*, 775 F.Supp. 1414, 1415 (D.Colo.1991)). Accordingly, Officers Ellis, Grove and Curnow are defendants in this action in their individual capacities only.

raised—violated a constitutional right. At the summary judgment stage, the court considers whether the evidence, viewed in the light most favorable to the party asserting the injury, shows that the alleged wrong-doer violated a constitutional right. *See Saucier,* 121 S.Ct. at 2156. If, under this standard, no constitutional violation occurred, then the officials have qualified immunity from suit and should be dismissed from the action. *Id.* at 2156.

■ If a constitutional violation can be said to have occurred, then the qualified immunity inquiry proceeds to the second step, which is to determine whether the right that was violated was clearly established at the time of the violation. *Saucier,* 121 S.Ct. at 2156; *DeSpain,* 264 F.3d at 971. This question is answered by deciding "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 121 S.Ct. at 2156. In other words, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful," the officer has qualified immunity for his actions even though they were unlawful. *Id.* at 2156.

■ In the instant case, Hays asserts Officers Ellis, Grove, and Curnow violated his Fourth Amendment rights either by using excessive force, or by failing to intervene in the use of excessive force,[3] in the course of arresting him. To establish his excessive force claim, Hays must demonstrate that the level of force used by these individual officers was not objectively reasonable in light of the facts and circumstances confronting them. *Saucier,* 121

S.Ct. at 2158; *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Evaluating the reasonableness of the force used by the officers "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. The totality of the specific facts and circumstances of the case must be considered, including such relevant factors as "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Saucier,* 121 S.Ct. at 2158 (quoting *Graham* at 396, 109 S.Ct. 1865).

■ The defendant officers' vociferous assertions to the contrary notwithstanding, the facts material to Hays's excessive force claims are disputed. In support of their Motion, the officers ask me to exclude the affidavit of Stone Roberts, a witness at the scene, as unreliable or an attempt to create a sham fact issue, *see* Reply Br. at 10, and then "make a determination as to whether the officers' actions were objectively reasonable under the circumstances and whether any mistaken belief about Mr. Hays ... reaching for a weapon was also objectively reasonable, given the totality of the circumstances of the stop." *Id.* It is neither my function nor inclination to make the requested determination.

It is undisputed that what Hays actually was reaching for was a pen and that one or more of the officers employed a standard

---

**3.** Hays contends it was Officer Curnow and either Officer Ellis or Grove who took him down, and that the other officers, Ellis or Grove and Steinman, saw the assault and made no attempt to intervene. An officer's failure to intervene in an excessive use of force by another officer also violates the aggrieved party's Fourth Amendment rights if the stand-by officer had a realistic opportunity to prevent the harm from occurring. *See Mick v. Brewer,* 76 F.3d 1127, 1136 (10th Cir.1996); Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims and Defenses, § 3.8 at 95–98 (Supp.2001–2) (collecting cases).

police "take-down" while the other officer(s) stood by in response to Hays having done so. According to Hays, he was stopped for driving "erratically" after he signaled left and then right looking for a gas station, had initially stepped out of his car but was ordered to get back in, and only attempted to get out again after he had been sitting in his car for 20 minutes with no explanation from any of the officers present. Officer Groves was antagonistic and aggressive from the outset, creating a situation in which he and Officer Ellis unnecessarily called for backup, became enraged, and unnecessarily escalated matters. After 20 minutes, Hays attempted to exit his vehicle to ask for some resolution and reached behind him as he stood up for a pen to take the officers' names. Hays states both he and the interior of his vehicle were illuminated by a flashlight or spotlight sufficient to show the item he was reaching for on his seat was a pen, not a weapon, and denies the circumstances were such that any reasonable officer could mistake his reach for "active resistance" to arrest or attempting to "evade arrest by flight."

The question of whether the level of force used by Officers Curnow and Ellis or Grove was or was not objectively reasonable in light of the facts and circumstances confronting them is appropriately answered not by a trial judge on summary judgment, but by a jury whose primary function is to make determinations about people's conduct based on objective standards. *See generally,* A. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding our Day in Court and Jury Trial Commitments?* 78 N.Y.U. Law. R. 982, 1132 (June 2003)(con-

sideration of objective standards of "human behavior, reasonableness, and state of mind [are] matters historically considered at the core province of jurors").[4] In Professor Miller's words, a decision now that no reasonable jury could give credence to Stone's testimony or otherwise find the use of force in this case excessive "discount[s] (1) the importance of a jury's evaluation of witnesses, (2) the greater sensory impact on the trier of live testimony, and (3) the value of trial cross-examination based on ... a full presentation of the evidence." *Id.* at 1090. For the purposes of summary judgment, Dr. Hays has established that Officers Grove, Ellis and Curnow violated his rights under the Fourth Amendment by using, or standing by and failing to intervene in the use of, excessive force against him in the course of his arrest.

▮▮▮▮] Having so concluded, the second step of the qualified immunity inquiry is to determine whether the right that was violated was clearly established at the time of the violation. *Saucier,* 121 S.Ct. at 2156. This is a question of law to be decided by the court. *See, e.g., Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1193 (10th Cir.2001). "[O]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Harris v. Robinson,* 273 F.3d 927, 931 (10th Cir. 2001). It is not necessary, however, that there be authority holding the precise action in question unlawful, so long as pre-existing law would have put a reasonable officer on notice that his action was unlawful. *See Saucier,* 121 S.Ct. at 2156–57;

---

4. Professor Miller's evocative article provides one of the best-reasoned and exhaustive considerations of Rule 56 and the litigation practices that surround it since the Supreme Court issued its 1986 *Matsushita* trilogy governing the application of Rule 56 and is recommended.

*Worrell,* 219 F.3d at 1215 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

 As a result of *Graham* and a host of other authority in existence in December 1999, a reasonable officer could not believe it was lawful to "take-down" or physically assault a person who did not pose a threat and/or was not actively resisting arrest or attempting to escape. *See, e.g., Graham,* 490 U.S. at 396; *Feemster v. Dehntjer,* 661 F.2d 87, 89 (8th Cir. 1981) (unlawful to apply force to individual who was no longer resisting arrest). It has also long been clearly established that an officer has a duty to intervene to prevent the use of excessive force by another police officer. *See, e.g., Mick,* 76 F.3d at 1136. The same is true with respect to the principle that the use of force is unreasonable and therefore excessive if the need to use such force resulted from the officer's own reckless or deliberate conduct during the seizure.[5] *See, e.g., Allen v. Muskogee,* 119 F.3d 837, 840 (10th Cir.1997); *Sevier v. City of Lawrence,* 60 F.3d 695, 699 (10th Cir.1995); *Yates v. City of Cleveland,* 941 F.2d 444, 447 (6th Cir.1991); *see also Medina v. Cram,* 252 F.3d 1124, 1132 (10th Cir.2001) (relying on pre-December 1999 law). Accordingly, I find as a matter of law it would be clear to a reasonable officer in December 1999 that it was unlawful to act as Curnow, Grove and Ellis allegedly did. These officers are not entitled to qualified immunity for their alleged violation of Hays's constitutional rights.

### 2. *Conspiracy.*

 I agree with Defendants that Hays's evidence in support of his claim that they conspired to assault him and to cover it up thereafter is little more than speculation or surmise based on his observations of their conduct (huddling together before and after the take-down), the fact Groves failed to appear at Hays's criminal trial and Hays's contention that the officers lied throughout the criminal proceedings. However, given that the nature of the inquiry into whether a conspiracy or agreement to interfere with another's civil rights is so tied to an evaluation of the parties' respective credibility and demeanor, I decline to take this issue from the jury at this stage of the proceedings. If it appears at the conclusion of Hays's case in chief that he has adduced no factual evidence to support of his contention that the officers "agreed" to take him down forcibly with no provocation and then "agreed" to lie about or cover up the facts, Defendants Motion may be revived as a motion under Rule 50, Fed.R.Civ.P.

Based on the foregoing, IT IS ORDERED that Defendant Steinman is formally DISMISSED from this action. The Motion for Summary Judgment of the City of Boulder and Officers Grove, Ellis and Curnow in their individual and "official" capacities is GRANTED in part and DENIED in part. The Motion is GRANTED as to Plaintiff's claims for malicious prosecution generally as well as to Plaintiff's claims under 42 U.S.C. § 1983 against the City of Boulder and the officers in their "official" capacities. It is DENIED as to the defenses of qualified immunity raised by the individual officers Grove, Ellis and Curnow to Plaintiff's excessive force claims, as well as to Plaintiff's claim for conspiracy against these same Defendants. The City of Boulder is DISMISSED from this action, which shall proceed against Defendants Grove, Ellis and Curnow in their individual capacities only, and only on Plaintiff's claims under 42 U.S.C. §§ 1983

---

**5.** Actions that precipitate a confrontation that are merely negligent, as opposed to reckless or deliberate, are not actionable under section 1983. *See Medina,* 252 F.3d at 1132; *Sevier,* 60 F.3d at 699 n. 7.