2005 SD 15

**Carol THORNTON, as Guardian Ad Litem for her son, Rinard Yellow Boy, Jr., Plaintiff and Appellee,**

**v.**

**CITY OF RAPID CITY, South Dakota, a Political Subdivision, as Employer and Entity; the Rapid City Police Department, Defendants,**

**and**

**Officer Tony Harrison, jointly and severally and individually, Defendant and Appellant.**

**No. 23167.**

Supreme Court of South Dakota.

Argued on Nov. 16, 2004.

Decided Jan. 26, 2005.

---

**528** 

Robin L. Zephier of Abourezk & Zephier, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

Timothy J. Becker of Banks, Johnson, Colbath, Sumner & Kappelman, Rapid City, South Dakota, Attorneys for defendant and appellant.

MEIERHENRY, Justice.

[¶ 1.] This is an intermediate appeal from a denial of Summary Judgment concerning claims against a Rapid City police officer for assault and battery and violation of civil rights. We affirm.

## PROCEDURAL BACKGROUND

[¶ 2.] Carol Thornton, as Guardian Ad Litem for her son, Rinard Yellow Boy, Jr., filed a lawsuit against the City of Rapid City, the Rapid City Police Department, and Officer Tony Harrison for negligence, assault and battery, negligent training, negligent supervision, negligent hiring, and violation of his civil rights under 42 U.S.C. § 1983. The claims against the City of Rapid City and the Rapid City Police Department were dismissed on summary judgment. The only claims remaining are against Officer Harrison for assault and battery and civil rights violations. The officer appeals the denial of summary judgment on these claims.

[¶ 3.] Officer Harrison asserts that the trial court erred by not dismissing both claims. Concerning the state law assault and battery claim, the officer maintains that his physical contact with Yellow Boy was privileged. Concerning the claim for civil rights violations, the officer asserts that he is protected by qualified immunity. The trial court rejected Harrison's arguments and ruled there were genuine issues of material fact to be decided by the trier of fact and denied summary judgment.

## STANDARD OF REVIEW

 [¶ 4.] Our standard of review on summary judgment is well-settled:

In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and [established] entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party, and reasonable doubts should be resolved against the moving party.... Our task on appeal is to determine only whether a genuine

issue of material fact exists and whether the law was correctly applied. *Citibank (S.D.), N.A. v. Hauff,* 2003 SD 99, ¶ 10, 668 N.W.2d 528, 532 (citations omitted). Whether the facts viewed most favorably to the nonmoving party entitle the moving party to judgment on the merits as a matter of law is a question of law. We review questions of law de novo. *State v. Jensen,* 2003 SD 55, ¶ 8, 662 N.W.2d 643, 646 (citations omitted).

## ISSUES

1. Whether the trial court erred when it failed to rule that Officer Harrison is entitled to a common law privilege, codified at SDCL § 22–18–2, protecting him from Yellow Boy's claims for assault and battery.

2. Whether the trial court erred when it failed to rule that Officer Harrison is entitled to qualified immunity protecting him from Yellow Boy's claim for civil rights violations.

## DECISION

[¶ 5.] This appeal was properly taken from the denial of summary judgment.[1] Again we note that we must view the evidence in the light most favorable to Yellow Boy. *Citibank (S.D.), N.A.,* 2003 SD 99, ¶ 10, 668 N.W.2d at 532. In order for Officer Harrison to prevail on summary judgment we must find that, even accepting Yellow Boy's version of the facts, Officer Harrison's actions were privileged and entitled him to qualified immunity as a matter of law.

*Privileged conduct*

■ [¶ 6.] We begin with the issue of whether the officer's conduct is privileged,

thereby protecting him against the state law assault and battery claim. A police officer's common law privilege to use force is codified as follows:

> To use or attempt or offer to use force or violence upon or toward the person of another is not unlawful when necessarily committed by a public officer in the performance of any legal duty or by any other person assisting him or acting by his direction.

SDCL 22–18–2. "Under [this] South Dakota statutory authority, the force used by a police officer is unlawful when it becomes greater than necessary to carry out his duties." *Spenner v. City of Sioux Falls,* 1998 SD 56, ¶ 23, 580 N.W.2d 606, 612. Thus, the question on summary judgment is whether, accepting Yellow Boy's version of the facts, Officer Harrison used force greater than necessary to carry out his duties. If it was greater than necessary, it was appropriate for the trial court to deny summary judgment on the state law assault and battery claim.

■ [¶ 7.] The facts in the light most favorable to Yellow Boy indicate that Officer Harrison was dispatched to the location of a reported non-felony disturbance, possibly involving a fight and destruction of property. When he arrived there were a number of people running up an alley and one person was shouting "there they go." Officer Harrison ran up the alley in pursuit of these individuals. Eventually, Officer Harrison caught sight of a male, the Plaintiff, walking down the sidewalk in the same direction as the running individuals.

[¶ 8.] According to Yellow Boy, he was calmly walking down the sidewalk to get a soda from a nearby Mini Mart when sever-

---

**1.** Yellow Boy's assertion that this Court does not have jurisdiction is without merit. We granted Officer Harrison's petition for discretionary appeal pursuant to Article V § 5 of the South Dakota Constitution and SDCL 15–26A–3(6) on April 5, 2004. The matter is properly before this Court.

al individuals ran by and around him. Approximately ten seconds later, Yellow Boy was violently tackled from behind by the officer. Yellow Boy's wrist was broken in the encounter. Officer Harrison admittedly did not ask Yellow Boy to stop or otherwise warn him that he was approaching. Instead, the officer ran towards Yellow Boy over a distance of many feet and, according to Yellow Boy, knocked him to the ground from behind and collapsed on top of him with his full weight. The officer then placed Yellow Boy in handcuffs despite pleas that his wrist was injured. Only after Yellow Boy was placed in handcuffs, did the officer investigate who he was and what he was doing. The police learned that Yellow Boy was not involved in the reported criminal activities and was merely a fifteen year old boy innocently walking to the store. The officer removed the handcuffs and took him home.

[¶ 9.] We recognize the importance of the privilege granted to officers· in the performance of their duties. However, where the nonmoving party in a summary judgment motion presents facts from which a trier of fact could find excessive conduct on the part of the officer, summary judgment would be error. Here, the factual scenario taken in the light most favorable to Yellow Boy raises an issue of material fact as to whether the force used was greater than necessary. Thus, it was not error for the trial court to deny summary judgment on the assault and battery claim.

*Violation of Civil Rights and Qualified Immunity*

 [¶ 10.] We next turn to the issue of whether qualified immunity shields the officer from Yellow Boy's claim that the officer violated his civil rights. "Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statu-

tory right of which a reasonable person would have known." *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir.2004) (quoting *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir.1996)). The parties agree that the constitutional claim in this case is for a violation of the Fourth Amendment based on the excessive use of force. This Court previously applied a three part test when evaluating an excessive use of force claim in conjunction with a qualified immunity defense. *Swedlund v. Foster*, 2003 SD 8, ¶ 19, 657 N.W.2d 39, 48. This test required us to determine (1) if the complaint alleged a violation of the plaintiff's constitutional rights, (2) if the constitutional rights were clearly established and (3) if a reasonable officer would understand that what he/she was doing violated the plaintiff's constitutional rights. *Id.* Since our decision in *Swedlund,* the federal courts have clarified their qualified immunity analysis and now present it as a two part inquiry. *See Brosseau v. Haugen*, ── U.S. ──, 125 S.Ct. 596, 598–99, 160 L.Ed.2d 583 (2004); *Littrell*, 388 F.3d at 582. While this analysis is essentially the same as that in *Swedlund*, for the sake of uniformity and clarity we apply the analysis in its more recent two part form, which controls.

 [¶ 11.] First the claim itself is to be analyzed, and then the qualified immunity defense. *See Parks v. Pomeroy*, 387 F.3d 949, 956–57 (8th Cir.2004); *Kuha v. City of Minnetonka*, 365 F.3d 590, 601–02 (8th Cir.2003). A court must ask the following questions: (1) " 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' " *Brosseau*, ── U.S. ──, 125 S.Ct. at 598, 160 L.Ed.2d 583 (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272, 281 (2001)); and (2) "if so, the next, sequential step is to re-

solve the qualified-immunity claim by asking whether the right was clearly established." *Bunting v. Mellen,* 541 U.S. 1019, 124 S.Ct. 1750, 1753, 158 L.Ed.2d 636, 639 (2004) (Justice Scalia, dissenting) (quotations and citations omitted). The two step analysis is the result of the separate nature of the excessive use of force claim and the qualified immunity defense. *See Hays v. Ellis,* 331 F.Supp.2d 1303, 1306 (D.Colo. 2004) ("Qualified immunity is an affirmative defense to a section 1983 action") (citation omitted).

*Violation of a Constitutional Right*

■■■ [¶ 12.] When considering the first question of whether the force used by the officer was excessive "the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Greiner v. City of Champlin,* 27 F.3d 1346, 1354 (8th Cir. 1994). In *Littrell,* the Eighth Circuit Court of Appeals explained it this way:

> First, courts must consider whether, "[t]aken in the light most favorable to the party asserting injury, ... the facts alleged show the officer's conduct violated a constitutional right." [*Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.]
>
> . . . .
>
> To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, "the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Greiner v. City of Champlin,* 27 F.3d 1346, 1354 (8th Cir. 1994). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396, 109 S.Ct. 1865, 104 L.Ed.2d 443. The Supreme Court has instructed, "[t]he calculus of reasonableness must

embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443. "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." *Foster v. Metro. Airports Comm'n,* 914 F.2d 1076, 1081 (8th Cir.1990). "In addition to the circumstances surrounding the use of force, we may also consider the result of the force." *Crumley v. City of St. Paul, Minn.,* 324 F.3d 1003, 1007 (8th Cir. 2003); *Patzner v. Burkett,* 779 F.2d 1363, 1371 (8th Cir.1985) (stating that, in considering the reasonableness of force used, the extent of any resulting injuries is relevant).

*Littrell,* 388 F.3d at 582–83. Officer Harrison alleges that even if Yellow Boy's version of the facts is accepted, the force used was objectively reasonable under the circumstances; therefore, summary judgment should have been granted.

■■■ [¶ 13.] Initially we note that the objective reasonableness of the officer's actions under the first prong of the qualified immunity analysis, which determines whether a constitutional violation has occurred, is a jury question. The following language from *Littrell* is informative in this regard:

> The district court properly submitted the issue of excessive force to the jury, and the jury found that Officer Franklin violated Ms. Littrell's constitutional right to be free from excessive force. See *Foster v. Metro. Airports Comm'n,* 914 F.2d 1076, 1081 (8th Cir.1990) ("The

question for the jury is whether, judging from the perspective of a reasonable officer at the scene of the arrest, the totality of the circumstances justifies the use of the force used."); *see also, Billingsley v. City of Omaha,* 277 F.3d 990, 995–97 (8th Cir.2002) (approving the submission of Eighth Circuit Model Jury Instruction (Civil) 4.10 for jury determination of an excessive force claim under the Fourth Amendment's reasonableness standard); *Goff v. Bise,* 173 F.3d 1068, 1073–74 (8th Cir.1999) (affirming a district court's denial of an officer's motion for judgment as a matter of law on the issue of excessive force where the evidence was sufficient to create a jury question as to whether the officer used an objectively unreasonable amount of force); *Jackson v. Crews,* 873 F.2d 1105, 1107–08 (8th Cir.1989) (rejecting an officer/defendant's challenge to excessive force instructions following a jury determination that the officer/defendant used excessive force).

*Id.* at 584. Therefore, if the evidence, viewed in a light most favorable to Yellow Boy, is such that a reasonable jury could find the force used by the officer was not objectively reasonable under the circumstances, summary judgment as to the first prong of the qualified immunity analysis would be improper. *See Kuha,* 365 F.3d at 600; *Foster v. Metro. Airports Comm'n,* 914 F.2d 1076, 1081 (8th Cir.1990).

[¶ 14.] Given the factual scenario described by Yellow Boy, we cannot say as a matter of law that the force employed by Officer Harrison was objectively reasonable under the circumstances. *See generally Goff v. Bise,* 173 F.3d 1068, 1073–74 (8th Cir.1999). The officer was responding to a non-felony disturbance call and the officer had no reason to believe that Yellow Boy was a threat to the safety of himself or others. Based on Yellow Boy's version of the facts, the officer was not forced to make a split-second judgment about the appropriate way to detain Yellow Boy, rather, he had many seconds to make this judgment as he was approaching Yellow Boy from behind. The suspect was not resisting, as he was not even made aware of the officer's presence or desire to stop and question him. Finally, the force used resulted in Yellow Boy's wrist being broken. The officer made no assessment of the suspect's willingness to cooperate before applying this force. *See Deorle v. Rutherford,* 272 F.3d 1272, 1285 (9th Cir. 2001) ("Less than deadly force that may lead to serious injury may be used only when a strong governmental interest warrants its use, and in such circumstances should be preceded by a warning, when feasible."). Even though the officer could reasonably have believed the man had just left the scene of the disturbance, under these circumstances violently tackling the walking man from behind without warning and with such force as to break his wrist, is not objectively reasonable as a matter of law. This issue must go before a jury to determine the facts and, in light of its factual determinations, whether the force used was excessive under the circumstances. *See Littrell,* 388 F.3d at 584.

*Clearly Established Right*

[¶ 15.] Under the first prong of the inquiry we have determined that a jury could find that the officer violated Yellow Boy's constitutional rights. Therefore, we reach the second prong of the qualified immunity inquiry, which deals directly with the defense of qualified immunity and "requires courts 'to ask whether the [constitutional] right was clearly established.'" *Id.* at 582 (citing *Saucier,* 533 U.S. at 201, 121 S.Ct. at 2156, 150 L.Ed.2d at 281). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Sauci-*

*er,* 533 U.S. at 202, 121 S.Ct. at 2156–57, 150 L.Ed.2d at 282. As very recently stated by the United States Supreme Court:

Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. *Saucier v. Katz,* 533 U.S. at 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force' "). Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation. It is important to emphasize that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.,* at 201, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272.

*Brosseau,* —— U.S. ——, 125 S.Ct. at 599, 160 L.Ed.2d 583. Thus, if the constitutional prohibition to the force used by the officer was not clearly established, qualified immunity applies to the officer's actions.

■■■ [¶ 16.] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Saucier,* 533 U.S. at 201–202, 121 S.Ct. at 2156, 150 L.Ed.2d at 282). The court in *Littrell* stated:

The second step of the qualified immunity inquiry will ... shield the officers from suit ... if their conduct was objec-

tively legally reasonable in light of the information they possessed at the time of the alleged violation. *See Harlow,* 457 U.S. at 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396. In other words, if the officers' mistake as to what conduct the law required is reasonable, they are entitled to the immunity defense. *Saucier,* 533 U.S. at 205, 121 S.Ct. 2151, 150 L.Ed.2d 272. Defendants will not be immune, however, "[']if, on an objective basis, it is obvious that no reasonably competent officer would have concluded' that the defendant should have taken the disputed action." *Winters v. Adams,* 254 F.3d 758, 766 (8th Cir.2001) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

*Littrell,* 388 F.3d at 583 (citing *Kuha,* 365 F.3d at 601–02).

■■■ [¶ 17.] Again, in a summary judgment action we must accept the version of the facts given by the nonmoving party. If these facts show that "the officers' mistake as to what conduct the law required is reasonable, they are entitled to the immunity defense." *Id.* On the other hand, immunity should not be granted "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant should have taken the disputed action." *Id.* (citations and quotations omitted). Thus, even if the jury could find that the officer violated Yellow Boy's constitutional rights, qualified immunity will still apply unless the pre-existing law had clearly established that the action taken by the officer was unconstitutional.

■■■ [¶ 18.] Ideally, caselaw involving nearly identical facts will be available to clearly establish the constitutionality or unconstitutionality of an officer's actions. However, as stated by the U.S. Supreme Court: "officials can still be on notice that

their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666, 679 (2002) (referencing *U.S. v. Lanier*, 520 U.S. 259, 270–71, 117 S.Ct. 1219, 1227–28, 137 L.Ed.2d 432, 445–46 (1997)). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Id.* "Even though the facts of a prior case may not be 'identical,' the reasoning of that case may establish a 'premise' regarding an unreasonable use of force that can give an officer fair notice that his conduct is objectively unreasonable." *Jones v. Buchanan*, 325 F.3d 520, 531–32 (4th Cir.2003) (citing *Hope*, 536 U.S. at 743, 122 S.Ct. at 2517, 153 L.Ed.2d at 680–81).

 [¶ 19.] Yellow Boy's right to be free of the type of apprehension used by the officer under these circumstances was clearly established at the time of this incident. The established law, based upon statutes and prior cases, provided sufficient notice that the officer's actions would be considered excessive and violative of the suspect's constitutional rights. Although there may not be prior case law that addresses the specific situation Officer Harrison faced, clearly established precedent may still exist. Lack of a body of case law on the specific circumstances does not automatically entitle an officer to qualified immunity. As one court has pointed out:

> Although there is no prior case prohibiting the use of this specific type of force in precisely the circumstances here involved, that is insufficient to entitle [ ][the officer]to qualified immunity: notwithstanding the absence of direct precedent, the law may be, as it was here, clearly established. See *Anderson v.*

*Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (rejecting the notion that officer liability cannot exist "unless the very action in question has previously been held unlawful"). Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct. When " 'the defendant ['s] conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts' that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir.1994) (quoting *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir.1993)).

*Deorle*, 272 F.3d at 1285–86; *see also Brosseau*, —— U.S. ——, 125 S.Ct. at 599, 160 L.Ed.2d 583 (stating that in an obvious case the general standards of *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) can "clearly establish the answer, even without a body of relevant case law.").

[¶ 20.] Federal courts have established that under circumstances similar to those faced by Officer Harrison, before detaining a suspect by forcefully tackling him to the ground, the officer should have first given the suspect an opportunity to stop voluntarily. *See Deorle*, 272 F.3d at 1285 ("Less than deadly force that may lead to serious injury may be used only when a strong governmental interest warrants its use, and in such circumstances should be preceded by a warning, when feasible."); *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir.1991) (finding that tackling suspect from behind and placing him in an ex-

tremely punishing pain compliance hold was excessive force); *Cf. Wilson v. City of Des Moines, Iowa,* 293 F.3d 447, 451 (8th Cir.2002) (stating that before using deadly force to prevent escape a warning should be given, if feasible); *Cf. Kuha,* 365 F.3d at 598 (concluding that a jury could properly find it objectively unreasonable to use a police dog without first giving the suspect a warning and "opportunity for peaceful surrender"). We believe that reasonable officers would know without specific guidance from the courts that tackling a non-felony suspect to the ground from behind where no exigent circumstances exist without first giving him an opportunity to surrender peacefully is unconstitutional.

 [¶ 21.] "The scope of an investigative detention is to be keyed to the purposes of the stop, with officers using 'the least intrusive means reasonably available to verify or dispel [their] suspicion[s] in a short period of time.'" *U.S. v. Jones,* 759 F.2d 633, 642 (8th Cir.1985) (quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229, 238 (1983)). "Force can only be used to overcome physical resistance or threatened force[.]" *Agee v. Hickman,* 490 F.2d 210, 212 (8th Cir.1974) (citing the trial court judge); *See also Feemster v. Dehntjer,* 661 F.2d 87, 89 (8th Cir.1981) (stating officers may use force to subdue prisoner, *if necessary*). While admittedly these are fairly broad and general propositions, they do clearly establish that applying substantial force before any resistance at all is encountered is generally unconstitutional. In addition to this general 'premise' regarding an unreasonable use of force, there is a limited amount of relevant caselaw specifically holding that it may be excessive force to tackle a suspect to the ground when he is not resisting. *See McNew v. Pleasant,* 1992 WL 162255, 4 (N.D.Ill.1992) (finding that where officer

made no attempt to identify himself or to ask for the suspect's cooperation, excessive force could be found because the suspect "could have been stopped by simply grabbing him more firmly instead of immediately tackling him and kneeing him in the back."); *Hays,* 331 F.Supp.2d at 1309 ("As a result of *Graham* and a host of other authority in existence in December 1999, a reasonable officer could not believe it was lawful to 'take-down' or physically assault a person who did not pose a threat and/or was not actively resisting arrest or attempting to escape.").

 [¶ 22.] We recognize that caselaw has clearly established that "[w]hen an arrestee flees or resists, some use of force by the police is reasonable." *Greiner,* 27 F.3d at 1355. However, according to Yellow Boy's version of the facts, he was not fleeing or resisting and was not even made aware of the officer's presence or desire that he stop.

 [¶ 23.] In addition to the cases establishing unreasonable force under the circumstances, the South Dakota Statutes governing police conduct also put the officer on notice that his actions were illegal and excessive. SDCL 23A–3–4 states:

> When arresting a person without a warrant, the person making the arrest must inform the person to be arrested of his authority and the cause of the arrest, and require him to submit, except when the person to be arrested is engaged in the actual commission of an offense or when he is arrested on pursuit immediately after its commission.

SDCL 23A–3–5 states in relevant part:

> An arrest is made by an actual or attempted restraint of the person arrested or by his submission to the custody of the person making the arrest. *No person shall subject an arrested person to more physical restraint than is reason-*

*ably necessary to effect the arrest.* Any person making an arrest may take from the arrested person all dangerous weapons and property as defined in § 23A–35–3 which the arrested person may have about his person.

(Emphasis added). Pursuant to available caselaw and these statutes, an officer in this State clearly knows that absent some exigent or exceptional circumstances,[2] the officer may not use force without first making a reasonable determination of what, if any, force is necessary. If this were simply an allegation that an officer who justifiably used some force ultimately used more force than necessary, the lack of specific caselaw would be difficult for Yellow Boy to overcome. However, the officer here used substantial force without even waiting for an indication that force was necessary or giving the suspect an opportunity to cooperate and avoid the application of force. If Yellow Boy's version of the facts is believed by a jury, the officer's decision to forego giving Yellow Boy an opportunity to surrender before applying substantial force becomes clearly unconstitutional. *See DuFour–Dowell v. Cogger,* 969 F.Supp. 1107, 1121 (N.D.Ill. 1997) (holding that where officers threw arrestee to the floor and applied substantial pressure to her back, and arrestee was not resisting and gave no indication of fleeing, the actions were so plainly excessive that a lack of closely analogous caselaw was not dispositive of the qualified immunity issue). Because under these circumstances using substantial force without first providing the suspect an opportunity to peacefully surrender is a violation of clearly established law, it was not error for the trial court to deny summary judgment on the claim for civil rights violations.

[¶ 24.] Since this case will now proceed in circuit court, we draw the trial court's attention to the procedure utilized by the federal courts when qualified immunity is an issue. The jury decides the facts; the court decides the question of qualified immunity. The Eighth Circuit Court of Appeals gave this direction to the trial courts:

The issue of qualified immunity, however, is frequently intertwined with unresolved factual questions. Where, as in this case, factual questions prevent a district court from ruling on the issue of qualified immunity, it is appropriate to tailor special interrogatories specific to the facts of the case. This practice allows the jury to make any requisite factual findings that the district court may then rely upon to make its own qualified immunity ruling. "[S]pecial interrogatories related to [the qualified immunity] defense [are] not improper per se," *Lampkins v. Thompson,* 337 F.3d 1009, 1014 (8th Cir.2003), but they must be carefully crafted so that "[t]he fact-finder's role is limited to determining whether the underlying facts are as the plaintiff has alleged or proved." *McIntosh,* 810 F.2d at 1431 n. 8; *accord Peterson,* 60 F.3d at 476 (granting new trial where district court submitted qualified immunity issue to jury and stating "the role of the jury in the new trial should be limited to determining what the officers knew at the time of the arrest. In light of the jury's findings, the court should then determine the legal questions of probable cause and qualified immunity."). On the facts of this case, special interrogatories should have asked (1)

---

**2.** We use the vague terms "exigent" and "exceptional" intentionally, as it would be difficult to anticipate all circumstances where using force without providing an opportunity for peaceful surrender is appropriate. A few obvious examples of such exigent or exceptional circumstances would include instances where the suspect has a weapon or is assaulting a third party.

whether Ms. Littrell resisted arrest before Officer Franklin forcibly restrained her and (2) whether Officer Franklin knew Ms. Littrel was injured when he continued to handcuff and forcibly place her in the car. Specific findings on these questions of fact would have enabled the district court to address the legal issue of qualified immunity through reference to excessive force standards that are clearly established.

. . . .

In short, where questions of historical fact exist, the jury must resolve those questions so that the court may make the ultimate legal determination of whether officers' actions were objectively reasonable in light of clearly established law. *See Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir.2002) ("It is important to recognize, however, that a defendant is entitled to have any evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and enter a post-trial decision on the defense.").

*Littrell,* 388 F.3d at 585–86.

[¶ 25.] The denial of summary judgment is affirmed.

[¶ 26.] GILBERTSON, Chief Justice, and SABERS and ZINTER, Justices, and MILLER, Retired Justice, concur.

[¶ 27.] MILLER, Retired Justice, sitting for KONENKAMP, Justice, disqualified.