PUBLISH

**February 27, 2013**

UNITED STATES COURT OF APPEALS

Elisabeth A. Shumaker
Clerk of Court

**TENH CIRCUIT**

---

MARY K. BECKER, individually, and
as the guardian of David H. Becker,

Plaintiff - Appellant,

v.

JASON BATEMAN, in an individual
capacity; EDWARD L. RHOADES, in
an official capacity; HEBER CITY
CORPORATION,

Defendants - Appellees.

No. 11-4054

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:07-CV-00311-CW)**

---

Jordan P. Kendell (Jeffrey D. Eisenberg with him on the briefs), Eisenberg &
Gilchrist, Salt Lake City, Utah, for Appellants.

Peter Stirba (J. Michael Hansen with him on the brief), Stirba & Associates, Salt
Lake City, Utah, for Appellees.

---

Before **GORSUCH**, **MURPHY**, and **HOLMES**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. Introduction

Plaintiff-Appellant David Becker was pulled over by Defendant-Appellee Officer Jason Bateman in a parking lot in Heber City, Utah. A confrontation ensued which ended in Becker being thrown to the ground and suffering a severe traumatic brain injury. Becker brought suit against Officer Bateman, the Heber City Chief of Police in his official capacity, and Heber City under 42 U.S.C. §1983, alleging Officer Bateman used excessive force in violation of the Fourth Amendment. The Complaint also asserted a claim for loss of consortium. The district court granted the defendants' motion for summary judgment, concluding Officer Bateman did not violate Becker's constitutional rights. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms in part** and **reverses in part** the judgment of the district court.

## II. Background

On the afternoon of May 14, 2005, Officer Bateman pulled Becker over in the parking lot of Day's Market in Heber City, Utah, for a cracked windshield. Officer Bateman suspected Becker had been drinking and asked Becker how much he had to drink that day. Becker initially denied that he had been drinking, and subsequently refused to answer when the question was repeated to him over the course of the stop. Officer Bateman asked Becker to exit the vehicle. Outside the vehicle, Officer Bateman attempted to perform various field sobriety tests, including the Horizontal Gaze Nystagmus test and a walking test. Becker

-2-

repeatedly asked why he had been stopped, to which Officer Bateman repeatedly replied that the stop was due to a cracked windshield. Becker was ordered to stand near the rear of his vehicle, where Officer Bateman attempted to place him under arrest. Apparently believing Becker to be resisting this attempt, Officer Bateman threw him to the ground. As a result, Becker suffered a severe traumatic brain injury. Most of the stop was recorded by a video camera affixed to Officer Bateman's dashboard.

Becker brought suit under 42 U.S.C. § 1983, alleging Officer Bateman used excessive force in violation of the Fourth Amendment. Count 1 of the complaint asserted Officer Bateman was individually liable for the use of excessive force. Count 2 alleged the City[1] was liable for adopting policies and practices which resulted in Officer Bateman's use of excessive force. Count 3 asserted a claim for loss of consortium on behalf of Becker's wife. The district court granted summary judgment in favor of all defendants, concluding Becker failed to establish the violation of a constitutional right.

---

[1]As noted above, Becker also named the Heber City Chief of Police in his official capacity as a defendant in the action. This claim and his claim against the City itself are, in essence, one in the same. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995) ("A suit against a city official in his official capacity is no different from a suit against the City itself.").

## III.  Discussion

### A.  Standard of Review

This court reviews a grant of summary judgment on qualified immunity grounds de novo, applying the same standard as the district court.  *J.W. ex rel. A.W. v. Utah*, 647 F.3d 1006, 1009 (10th Cir. 2011).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Id.*  Put differently, "[t]he question . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quotation omitted).  "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

This court reviews summary judgments based on qualified immunity differently than other summary judgments.  "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1)

-4-

the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The court maintains discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). While Officer Bateman is entitled to assert the qualified immunity defense, the City is not. *Starkey ex rel. A.B. v. Boulder Cnty. Social Servs.*, 569 F.3d 1244, 1263 n.4 (10th Cir. 2009) ("Qualified immunity . . . is available only in suits against officials sued in their personal capacities, not in suits against governmental entities or officials sued in their official capacities.").

## B. Officer Bateman

In reviewing the grant of summary judgment to Officer Bateman, we decline to consider whether the district court erred in concluding no constitutional violation occurred and instead opt to address whether the rights at issue were clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 236; *see also Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008) ("This court . . . may affirm for any reason supported by the record, but not relied on by the district court."). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "Ordinarily, in order for the law to be clearly

-5-

established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quotation omitted). Because, however,

> the existence of excessive force is a fact-specific inquiry, . . . there will almost never be a previously published opinion involving exactly the same circumstances. Thus, we have adopted a sliding scale: The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.

*Id.* (quotations omitted). Thus, to overcome Officer Bateman's defense of qualified immunity, Becker must demonstrate it was clearly established as of May 14, 2005, that Officer Bateman's use of force was excessive. Becker has not carried this burden.

In *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255–56 (10th Cir. 2007), this court considered whether an officer's application of a "twist lock" maneuver to a potentially intoxicated individual found in the backseat of a vehicle constituted a violation of clearly established law. The court concluded a reasonable jury could have concluded the officer's use of the twist lock was unreasonable under the Fourth Amendment. *Id.* at 1255. The court nonetheless concluded the officer was entitled to qualified immunity, however, because "the risks presented by potentially intoxicated individuals are inherently fact-dependent and the extent to which an officer may use force in such situations

-6-

has not been definitively answered by this circuit." *Id.* at 1257. The court reached this conclusion notwithstanding authority in other circuits discussing at greater length "the extent to which law enforcement officers may use forceful techniques to protect themselves from the risks presented by potentially intoxicated individuals." *Id.* at 1256–57. *Novitsky* thus indicates there was no clearly established law as of 2007 regarding the appropriate level of force which may be used to arrest a potentially intoxicated person during a stop. Accordingly, because the conduct in Becker's complaint took place in 2005, Becker cannot carry his burden under the second prong of the qualified immunity analysis.

Becker's attempts to either distinguish *Novitsky* or demonstrate the law was otherwise clearly established are unpersuasive. First, Becker argues the result in *Novitsky* can be explained not by a genuine lack of clearly established law in 2007 but by the plaintiff's failure to adequately direct the court's attention to applicable authority. *Novitsky* did note the plaintiff's arguments were "poorly framed and hard to follow." *Id.* at 1252. The court's conclusion that this circuit had not definitively determined the extent to which an officer may use force in a confrontation with a potentially intoxicated person, however, was not framed as a response to the plaintiff's poor briefing. *Id.* at 1257. Rather, it was framed as a legal conclusion which is binding precedent in this court. *See id.*; *Rezaq v. Nalley*, 677 F.3d 1001, 1012 n.5 (10th Cir. 2012) ("[W]e are bound by prior panel decisions absent superseding en banc review or Supreme Court decisions.").

-7-

Becker next cites to *Corder v. Denver*, No. 98-1453, 2000 WL 1234846 (10th Cir. Aug. 31, 2000) (unpublished).  In *Corder*, the court affirmed the denial of a summary judgment motion based on qualified immunity on an excessive force claim involving an intoxicated plaintiff.  *Id.* at *4.  The police arrested a large, belligerent, intoxicated man who had been thrown out of a bar.  *Id.* at *1.  They then attempted to take the arrestee to jail in a transport van, but pulled over when he began rocking the van violently from side to side.  *Id.*  The police removed him from the vehicle and held him down over an extremely hot manhole cover while they attempted to place leg shackles on him.  *Id.* at *1–2.  The man did not resist when he was first asked to exit the van, and voluntarily complied with the officers' instructions to lay over the manhole cover.  *Id.* at *1.  While he was being held down, he began kicking, screaming, and yelling that he was "on fire."  *Id.* at *2.  One of the officers eventually maced the man in the face.  *Id.*  The arrestee suffered severe second and third degree burns and sued the officers under § 1983.  *Id.*  The district court denied the officers' motion for summary judgment based on qualified immunity, and this court affirmed.  *Id.* at *2, *4.  *Corder* is insufficient to satisfy Becker's burden to show a violation of clearly established law.  A single unpublished case does not necessarily indicate that the law was clearly established.[2]  *Morris*, 672 F.3d at 1197 n.5.  More importantly,

---

[2]Similarly, Becker's citation to *Hays v. V.P. Ellis*, 331 F. Supp.2d 1303 (D. Colo. 2004), is inadequate to demonstrate Officer Bateman's conduct violated
(continued...)

*Corder* is not factually analogous to the present case because it did not concern the propriety of the officers' initial takedown but rather whether the conduct after the takedown constituted excessive force.

The additional authority Becker cites is similarly unavailing. Neither *Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007) nor *York v. City of Las Cruces*, 523 F.3d 1205 (10th Cir. 2008) involved a potentially intoxicated plaintiff.[3] *Herrera v. Bernalillo County Board of County Commissioners*, 361 F. App'x 924, 926 (10th Cir. 2010) (unpublished), *Shannon v. Koehler*, 616 F.3d 855, 857–58 (8th Cir. 2010), and *Lustig v. Mondeau*, 211 F. App'x 364, 365 (6th Cir. 2006) (unpublished) were all decided after 2005, and the former two involved incidents which occurred after 2005.[4] *Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012), was decided long after the events giving rise to Becker's claim. Further, although the plaintiff there was eventually cited with public intoxication, the officers were unaware of the intoxication until after the takedown. *Id.* at 1190.

---

[2](...continued)
clearly established law. Not only is *Hays* an interlocutory district court decision, it is also unclear whether it involved a police encounter with an intoxicated plaintiff. *See id.* at 1307–08.

[3]*See Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 ("Because individuals who are intoxicated are often unpredictable, [officers are] confronted with an additional layer of uncertainty.").

[4]Although the plaintiff in *Herrera* was cited for minor in possession of alcohol, there are no indications he was potentially intoxicated. *See Herrera v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 361 F. App'x 924, 926 (10th Cir. 2010) (unpublished).

The only case published before the incident here involving analogous facts is *Santos v. Gates*, 287 F.3d 846, 853–54 (9th Cir. 2002).  In *Santos*, the Ninth Circuit concluded there existed a disputed issue of material fact whether the police used excessive force in taking an intoxicated plaintiff to the ground and thereby breaking his back.  *Id.*  This single published decision from another circuit, however, falls short of demonstrating "the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Morris*, 672 F.3d at 1196.  Moreover, the summary judgment record does not establish Officer Bateman's conduct was so obviously egregious as to diminish the specificity needed from prior case law to clearly establish the violation.  *See id.*  Because Becker has thus failed to carry his burden to show the law was clearly established at the time of the incident, the district court properly concluded Officer Bateman was entitled to qualified immunity for Becker's excessive force claim.

## C.    City Defendants

"A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998).  The district court disposed of Becker's claim against both Officer Bateman and the City based on its conclusion

that Officer Bateman did not violate Becker's constitutional rights.  While it was unnecessary to review that conclusion in reviewing the district court's grant of summary judgment to Officer Bateman, it is necessary to review that conclusion with respect to the City.  *Starkey*, 569 F.3d at 1263 n.4.

Citing *Mecham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007), the district court concluded there were no disputed issues of material fact because the events giving rise to his claim were recorded on Officer Bateman's dash cam.  It therefore undertook to consider whether Officer Bateman's actions were objectively reasonable, considering the severity of the underlying offense, whether Becker posed an immediate threat to the safety of Officer Bateman or others, and whether Becker was actively resisting arrest.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007).  The district court resolved the first two of these factors in Becker's favor, noting that "[t]he underlying offense—a cracked windshield— was not severe" and "nothing in the video suggests that [Becker] was going to act violently or intended to flee."  Mem. Decision & Order at 5.  The court also concluded, however, that the video made clear Becker was resisting arrest, and Becker's size, obstinance, and intoxication all created a situation "permeated with unknowns."  *Id.*; *see also Novitsky*, 491 F.3d at 1255 ("[I]ndividuals who are intoxicated are often unpredictable.").  It therefore concluded Officer Bateman's

-11-

actions were objectively reasonable and did not violate Becker's constitutional rights.

In *Mecham*, the district court denied the officers' motion for summary judgment even though there was no dispute as to the underlying events upon which the plaintiff's claim was based, concluding "the question of objective reasonableness is one for the jury to decide." 500 F.3d at 1203–04. This court reversed, stating, "[w]hile this proposition might hold where there are disputed issues of material fact, the question of objective reasonableness is *not* for the jury to decide where the facts are uncontroverted." *Id.* at 1204. Here, however, notwithstanding the dash cam video, the relevant facts are controverted, and the evidence construed in the light most favorable to Becker would establish a violation of his Fourth Amendment rights. That is, reasonable jurors could conclude Becker was not resisting arrest at the time he was taken to the ground by Officer Bateman. *Graham*, 490 U.S. at 396. To be sure, reasonable jurors could agree with the district court's assessment of the video. That is, reasonable jurors could agree that Becker's language and actions after Officer Bateman told him he was under arrest[5] "indicate a clear resistence of arrest" which made the amount of force used objectively reasonable. Mem. Decision & Order at 6. Such conclusions, however, are not the only inferences that can be drawn from the

---

[5]For example, the video depicts Becker saying "No" and pulling his hand away after Officer Bateman attempts to apply a wrist lock.

video. Reasonable jurors could infer Becker's statement of "No" was not a verbal indication of intent to resist arrest but a simple plea not to be arrested,[6] and that Becker's withdrawing of his hand after Officer Bateman attempted to place it in a wrist lock was simply reflexive. *See White v. Martin*, 425 F. App'x 736, 742–43 (10th Cir. 2011) (unpublished) (drawing reasonable inference that suspect acted reflexively when withdrawing wrist in support of conclusion that officer applied excessive force).[7] Importantly, after withdrawing his wrist and moments before being taken to the ground, the dash cam video shows Becker placing both hands on the trunk of his vehicle and stating, "I am not resisting." Reasonable jurors could thus find Becker had ceased any resistence prior to the application of force giving rise to his claims. This finding would support the conclusion Officer Bateman applied excessive force. *See id.* at 743 (noting that application of force after any resistence had ceased supports inference of excessive force).

---

[6]The district court rejected this inference. In so doing, the court improperly weighed the evidence and failed to draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The district court was correct to observe, however, that the relevant inquiry is not what Becker subjectively intended by his statement but what was reasonable in the eyes of a law enforcement officer. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

[7]Because *White* is unpublished, and therefore not precedential, it is cited solely for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A).

Before this court, the City argues that Becker's conduct posed a threat to officer safety which justified the use of the take down maneuver. We interpret this argument as a claim that the district court erred in concluding there was no evidence indicating Becker acted violently or intended to flee, and thus the second *Graham* factor compels the conclusion that Officer Bateman's conduct was reasonable as a matter of law. The justifications offered for the claim that Becker posed a safety threat, however, all depend on the claim that Becker was clearly resisting arrest.[8] Nevertheless, as this court has already concluded, reasonable jurors could differ on this question. Accordingly, reasonable jurors could also find that Becker did not pose a threat to the safety of Officer Bateman or others sufficient to justify the use of a takedown maneuver. *Compare Novitsky*, 491 F.3d at 1254–55 (noting that a reasonable jury could conclude officer used excessive force on potentially intoxicated suspect when suspect had not resisted or acted aggressively toward officers), *with Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1026, 1031 (10th Cir. 1997) (concluding officers were justified in applying takedown maneuver to intoxicated suspect who had resisted arrest and who had turned to faced officers in a fighting stance with

_____

[8]The City also makes a passing reference to a portion of the dash cam video in which Becker places one hand behind his back while facing Officer Bateman. The City rightly points out that such a situation can pose a threat to officer safety because suspects often conceal weapons in their back pocket or the seat of their pants. Here, however, the video makes clear both of Becker's hands were brought into Officer Bateman's field of view well before Becker was taken to the ground.

clenched fists). Because there exist disputed issues of material fact which, when construed in the light most favorable to Becker, establish Officer Bateman used excessive force, the district court erred in concluding as a matter of law Officer Bateman's actions did not violate Becker's Fourth Amendment rights.

## D. Disposition

Because the violation of constitutional rights Becker asserts was not clearly established at the time of the violation, the district court's grant of summary judgment to Officer Bateman is affirmed. However, the district court erred in concluding there were no genuine issues of material fact as to whether a constitutional violation occurred. The grant of summary judgment in favor of the City must therefore be reversed. On remand, the district court must determine whether Becker can withstand summary judgment as to the second element of his municipal liability claim. *See Bd. of Cnty Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997).[9] Similarly, the district court must determine whether Mrs. Becker can maintain a cause of action for loss of consortium against the City in light of

---

[9]Becker invites this court to rule on the merits of this claim, and discusses in some detail the evidentiary basis for his claim that the City adopted a policy or custom which gave rise to his injuries. Such a ruling, however, would be inappropriate. The district court has not considered any aspect of Becker's municipal liability claims other than the antecedent question whether his constitutional rights were violated. There is therefore nothing for this court to review. *See Chrisman v. Comm'r.*, 82 F.3d 371, 373 (10th Cir. 1996) ("[T]his court will not provide advisory opinions.").

this court's ruling that a reasonable jury could conclude Becker's constitutional rights were violated.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is **affirmed in part** and **reversed in part**, and this matter is **remanded** to the district court for further proceedings consistent with this opinion.