**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| J.W. and M.R.W., individually and as parents, guardians and next friends of A.W. f/k/a/ A.M., a minor child and M.W. f/k/a/ K.C., a minor child,<br><br>        Plaintiffs-Appellants,<br><br>    v.<br><br>STATE OF UTAH; UTAH STATE DEPARTMENT OF HUMAN SERVICES; ROBIN ARNOLD-WILLIAMS, individually and in her former capacity as Executive Director of the Utah State Department of Human Services; LISA-MICHELLE CHURCH, in her capacity as Executive Director of Utah State Department of Human Services; DIVISION OF CHILD AND FAMILY SERVICES; RICHARD ANDERSON, individually and in his capacity as Director of the Division of Child and Family Services; CAROLYN HANSEN, KOLYN TACY, and LAURIE ZUMBRUNNEN, individually and in their official capacities,<br><br>        Defendants-Appellees. | No. 10-4060 |

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:05-CV-00968-CW)**

S. Brook Millard of Wrona Law Firm, P.C., Draper, Utah, for Plaintiffs–Appellants.
Peggy E. Stone, Assistant Utah Attorney General (Mark L. Shurtleff, Utah Attorney General, with her on the brief), Salt Lake City, Utah, for Defendants–Appellees.

---

Before **MURPHY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

This case arises from an unfortunate situation of child-on-child abuse within the foster care system. Plaintiffs are a foster couple and their now-adopted foster children who allege they incurred injuries after an abusive foster child was placed in their home in August of 2002. In this § 1983 action, Plaintiffs raised several state and federal claims against the State of Utah and the various State employees and entities involved in placing this child in their home. The district court dismissed several of Plaintiffs' claims under Rule 12(b)(6) and granted summary judgment to Defendants on Plaintiffs' remaining federal claims. Plaintiffs' remaining state claims were then remanded to the state court for disposition. On appeal, Plaintiffs challenge the Rule 12(b)(6) dismissal of their negligence claims and the grant of summary judgment to the children's caseworker and her direct supervisor on Plaintiffs' Fourteenth Amendment due process claim.

-2-

## BACKGROUND

While Plaintiffs J.W. and M.R.W. were in the process of adopting their five-year-old foster daughter, A.W., they were asked whether they would also be willing to accept infant M.W. and her six-year-old brother, W.C.C., as foster children. All three children had the same caseworker at Utah's Division of Child and Family Services. Plaintiffs allege the Division's records revealed that W.C.C. had a history of sexual abuse, sexual reactivity, and violence; however, Defendants failed to warn Plaintiffs of this history, although the children's caseworker did tell Plaintiffs that W.C.C. was being medically treated for ADHD, occasionally told lies, had exhibited some jealous behaviors, and had made some racist comments about a previous foster brother. Soon after W.C.C. was placed in the home, he began engaging in violent and sexual behavior towards A.W., causing her extensive and permanent psychological harm. Ten days following this placement, A.W.'s adoption was finalized. W.C.C. was removed from the home some months later, and M.W. was subsequently adopted into Plaintiffs' home. Plaintiffs allege A.W.'s abuse at the hands of W.C.C. caused her to later abuse M.W. in similar fashion.

Plaintiffs' complaint raised, inter alia, several state negligence claims against the State and its entities and a Fourteenth Amendment claim against the children's caseworker and her direct supervisor. The district court dismissed Plaintiffs' negligence claims based on Utah's Governmental Immunity Act, which

-3-

provides immunity to the State when the alleged harm is caused by a third party's assault or battery. As for Plaintiffs' Fourteenth Amendment claim, the court held that the caseworker and her supervisor were entitled to qualified immunity because Plaintiffs had not shown a failure to exercise professional judgment on the part of the caseworker, nor had they shown any basis for holding the supervisor liable under § 1983. Plaintiffs challenge these decisions on appeal.

**DISCUSSION**

We review the district court's dismissal of Plaintiffs' negligence claims under Rule 12(b)(6) de novo. *See MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1220 (10th Cir. 2002). We also review the district court's grant of summary judgment on qualified immunity grounds de novo, applying the same standard as the district court. *See Lawmaster v. Ward*, 125 F.3d 1341, 1346 (10thCir. 1997).

We first consider the dismissal of Plaintiffs' negligence claims on governmental immunity grounds. Under Utah law, a three-step test determines whether the State retains immunity from suit. *See Hoyer v. State*, 212 P.3d 547, 553 (Utah 2009). This test considers "(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Peck v. State*, 191 P.3d 4, 7 (Utah 2008) (internal quotation marks omitted). The parties agreed for purposes of the motion to dismiss that the State's blanket immunity had been waived, absent an exception, by Section 63G-7-301(4) of the Utah Code,

-4-

which waives immunity for "any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." Utah Code Ann. § 63-G-7-301(4). However, Defendants contend—and the district court agreed—that an applicable exception to that waiver was provided in the next subsection of the statute, which states that immunity is not waived under subsection 4 "if the injury arises out of, in connection with, or results from: . . . (b) assault, battery, . . . or violation of civil rights." *Id.* § 63G-7-301(5).

On appeal, Plaintiffs argue the district court erred in holding that this exception provided the State entities with immunity for the alleged harms caused by W.C.C. Plaintiffs argue that their complaint's allegations regarding W.C.C.'s young age and "mental impairments"[1] were sufficient to create a fact issue as to whether his actions could be considered intentional torts. (Appellant's Opening Br. at 20.) However, we conclude that the district court correctly dismissed Plaintiffs' negligence claims based on the battery exception to Section 63-G-7-301's waiver of immunity.

---

[1] In their complaint, Plaintiffs alleged that W.C.C. was being medically treated for Attention Deficit Hyperactivity Disorder when he was placed with them and that he later received treatment at a day treatment program at Valley Mental Health and an in-patient program at Primary Children's Hospital. We are not persuaded, however, by Plaintiffs' assertion that these allegations created a factual dispute as to whether W.C.C.'s actions were conscious and deliberate. We see nothing in the complaint supporting Plaintiffs' contention that W.C.C.'s alleged mental problems were sufficiently severe that his actions could be found to have been purely autonomic.

Under Utah law, a battery is committed if (1) the actor deliberately makes a physical contact and (2) this contact is deemed harmful or offensive at law, regardless of whether the actor was aware of the harmful or offensive nature of the contact. *See Wagner v. State*, 122 P.3d 599, 603-04 (Utah 2005). Although W.C.C. may not have been aware of the harmful or offensive nature of his contact with A.W., the types of contacts alleged in Plaintiffs' complaint—repeated physical and sexual abuses—were of a deliberate nature, and they certainly fall within the definition of harmful or offensive contacts. *See id.* at 609 (explaining that "the law defines 'harmful and offensive' with reference to the mores of polite society, and protects against invasions of bodily integrity perpetrated outside those bounds"); *see also id.* at 605 (explaining that the "actor need not appreciate that his contact is forbidden; he need only intend the contact, and the contact must, in fact, be forbidden").

We are not persuaded by Plaintiffs' argument that the *Wagner* test applies only to adults and that Utah requires a higher showing of intent for children. Plaintiffs argue that the *Wagner* court made clear that physical contacts from a young child will not be batteries per se. However, the court's reasoning—that certain contacts from very young children are not deemed offensive or harmful at law because reasonable people would consider these contacts to be normal and customary—relates only to the second prong of the test for battery and does not assist Plaintiffs' argument that Utah courts would require an additional intent

-6-

element under the first prong of this test for physical contacts made by children. Nothing in *Wagner* suggests the Utah Supreme Court would find the violent physical and sexual attacks alleged in this case to be exempt from the definition of battery simply because they were committed by a six-year-old child who was being treated for ADHD. Nor are we persuaded by Plaintiffs' citation to the Restatement comment that "[a] child may be of such tender years that he has no awareness of these matters and is in fact incapable of the specific intent that is required." Restatement (Second) of Torts § 895I, cmt. b. We are not convinced Utah courts would interpret this comment to mean that a child, unlike an adult, must have the specific intent to harm or offend, and not just the specific intent to make a contact that will be objectively considered harmful or offensive at law. Like an adult having an epileptic fit, a very young child may not always be in control of his limbs and thus may make a physical contact without having the intent to do so. *Cf.* Restatement (Second) of Torts § 895J cmt. c, illus. 2. This does not suggest, however, that contacts initiated by children must satisfy an additional intent element in order to be considered intentional torts. We are also unpersuaded that the Utah Supreme Court's discussion of a significantly different legal standard in the insurance case of *N.M. v. Daniel E.*, 175 P.3d 566 (Utah 2008), should inform our consideration of the appropriate standard to apply in an intentional tort case.

We are persuaded the Utah Supreme Court would apply the *Wagner* test to

-7-

cases involving children as well as adults, and we conclude W.C.C.'s alleged conduct fell squarely within the definition of battery. We thus affirm the district court's dismissal of Plaintiffs' negligence claims on governmental immunity grounds under Section 63-G-7-301.

We turn now to the district court's grant of summary judgment on qualified immunity grounds to the children's caseworker and her direct supervisor on A.W. and M.W.'s Fourteenth Amendment due process claim.[2] State officials are generally liable under the due process clause only for their own acts, and not for violence committed by others. *See Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). However, "there are two recognized . . . exceptions to this rule: (1) the special relationship doctrine; and (2) the 'danger creation' theory." *Id.* In this case, Plaintiffs rely on the first exception, the special relationship doctrine. This doctrine applies "when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Id.* Thus, the State owed A.W. and M.W. the affirmative duty of protection while they were in foster care. *See Yvonne L. v. N.M. Dep't of Human Servs.*, 959 F.2d 883, 892-93 (10th Cir. 1992). Indeed, the constitutional right of foster children to be kept

---

[2] It does not appear that J.W. and M.R.W. raised a Fourteenth Amendment claim against any Defendants. In any event, since these two Plaintiffs were not in the State's custody, they would be unable to succeed on the special relationship theory asserted in this case. *See Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995).

reasonably safe from harm has been clearly established since at least 1985. *Id.*

However, state officials will only be found to have violated this right if they "knew of the asserted danger to [foster children] or failed to exercise professional judgment with respect thereto, . . . and if an affirmative link to the injuries [the children] suffered can be shown." *Id.* at 890. The applicable standard, "'failure to exercise professional judgment,' requires more than mere negligence: it requires an abdication of such professional responsibility," and "[s]uch abdication must be sufficient to shock the conscience." *Johnson v. Holmes*, 455 F.3d 1133, 1143 (10th Cir. 2006).

Plaintiffs contend that the children's caseworker abdicated her professional responsibilities when she placed W.C.C. in Plaintiffs' home because she neither considered W.C.C.'s history nor deliberated on whether this placement would be in A.W. and M.W.'s best interests. However, the undisputed evidence in the record refutes these contentions. The record reflects that the caseworker knew of the children's histories and had observed their interactions, considered their safety, and received reports from Plaintiffs regarding W.C.C.'s pre-placement visits when she decided that this placement would be safe and appropriate for all involved. Plaintiffs have not demonstrated a factual dispute as to whether the caseworker actually made this decision following deliberation and consideration of the relevant facts, and they do not argue or cite to "particularized evidence" showing that this decision "was an impermissible deviation from professional

judgment." *Johnson*, 455 F.3d at 1144. We therefore affirm the district court's grant of summary judgment to the caseworker on Plaintiffs' due process claim against her.

As for the caseworker's supervisor, the district court correctly concluded that Plaintiffs' claim was essentially one of negligent supervision, which is insufficient to support a § 1983 claim. *See Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). The undisputed evidence in the summary judgment record reflects that the supervisor was not responsible for the placement decision on which Plaintiffs' claim is premised. Plaintiffs have cited to no evidence that the supervisor personally participated or knowingly acquiesced in the alleged deprivations of Plaintiffs' constitutional rights, and thus the district court correctly held that Plaintiffs have not set forth a valid basis for finding the supervisor liable under § 1983. *See id.*

## CONCLUSION

For the foregoing reasons, the district court's judgment is **AFFIRMED**.