FILED
United States Court of Appeals
Tenth Circuit

October 28, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

IRVING J. MARQUEZ,

      Plaintiff-Appellee,

v.

BOARD OF COUNTY
COMMISSIONERS OF EDDY
COUNTY; VICTOR E. MARTINEZ,
JR.; DARREN JONES; RUTH ANN
WALKER; SAL REY SALCIDO;
DANETTE MARTINEZ,

      Defendants-Appellants.

No. 12-2209
(D.C. No. 1:11-CV-00838-JAP-WDS)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

The Board of County Commissioners, et al. ("Defendants"),[1] appeal the district

court's denial of their motion for partial summary judgment based on qualified

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]     Only individuals are entitled to qualified immunity, the basis for the motion for partial summary judgment presented here on appeal. *See Camuglia v. The City of*

(continued)

immunity related to Irving J. Marquez's deliberate indifference claims brought under 42 U.S.C. § 1983.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.    BACKGROUND

Mr. Marquez was pulled over after Sheriff's Deputy Victor Martinez saw Mr. Marquez's truck swerve and nearly collide with a tractor-trailer.  While pulling to the side of the road, Mr. Marquez twice collided with the guardrail.  When he stepped out of his truck, he staggered and was unable to keep his balance.  But despite Deputy Martinez's suspicions, Mr. Marquez was not intoxicated— unbeknownst to Mr. Marquez, he had contracted West Nile Virus and was now suffering from its increasingly ill effects.

Upon questioning by Deputy Martinez, Mr. Marquez denied he had been drinking or using drugs, but did mention he was sick and had taken an over-the-counter medication for his symptoms.  Mr. Marquez then submitted to a breathalyzer test, which registered zero, indicating no alcohol use.  After another officer, Deputy Darren Jones, arrived, the two officers searched the car and Mr. Marquez's person for evidence that he had been using drugs, but found nothing.  By that point Mr. Marquez was unable to stand without losing his balance and had trouble focusing on the officers' questions.  He was also sweating profusely.

_Albuquerque_, 448 F.3d 1214, 1223 (10th Cir. 2006).  Thus, although the Board of County Commissioners is named as an appellant, only the individuals' appeals are before us.

The officers decided to administer a field sobriety test, which Mr. Marquez promptly failed on account of losing his balance and not being able to follow finger movements. Deputy Martinez decided to arrest Mr. Marquez for driving under the influence, reasoning that he had never seen a sober person fail a field sobriety test. Though they had ruled out alcohol to explain the way he was acting, the officers discussed the possibility that Mr. Marquez had been smoking methamphetamine. They also discussed the possibility he had a medical condition, asking him if he had high blood pressure or diabetes, but Mr. Marquez denied having any medical conditions.

Mr. Marquez was handcuffed, placed in the squad car, and told he would have to submit to a blood test. On the way to the medical center for blood testing, Deputy Jones had to hold onto Mr. Marquez to prevent him from falling over. When they arrived at the medical center, a medical technician drew Mr. Marquez's blood (later revealed to be negative for drugs and alcohol). But despite being at a hospital and observing Mr. Marquez's worsening condition, the officers did not have him medically evaluated.

The officers took Mr. Marquez to the sheriff's department to file paperwork, where Mr. Marquez's condition continued to deteriorate. He was unable to stand without assistance. The officers then took Mr. Marquez to a detention center, where Deputies Martinez and Jones told the intake officers that Mr. Marquez was under the

influence of some drug. An intake officer noticed Mr. Marquez's condition and called for medical attention.

A nurse, Ruth Ann Walker, was thus brought in and observed Mr. Marquez's inability to stand, balance, focus, or speak intelligibly. Deputy Martinez told Ms. Walker that Mr. Marquez was coming down from a drug high. She did not take his vital signs. Instead, she instructed the intake officers to accept Mr. Marquez into custody and to call her if his condition worsened. Although he had not been medically screened, as detention center policy required in such circumstances, the officers booked Mr. Marquez into custody. By that point he was unable to walk, stand, answer questions, dress himself, sign paperwork, or even take a booking photo without assistance.

After two-and-a-half hours of observing Mr. Marquez's deteriorating condition, the intake officers called Ms. Walker and this time she took Mr. Marquez's vital signs. She discovered he was running a 104 degree fever and she immediately had him transported to a hospital, where he was eventually treated for West Nile Virus. However, as a result of the brain swelling caused by the delay in treating his fever, Mr. Marquez suffered permanent, life-altering injuries.

Mr. Marquez filed suit under § 1983 alleging that the Defendants deprived him of his Fourteenth Amendment due process rights when, as a pretrial detainee in the Defendants' custody, they were allegedly deliberately indifferent to his serious medical needs. He also brought a number of state-law claims. Following discovery,

the Defendants moved for summary judgment on the § 1983 claims arguing they were protected by qualified immunity.

The district court denied summary judgment, finding that qualified immunity was unavailable because Mr. Marquez presented evidence the Defendants recklessly disregarded his obvious symptoms. The court concluded that given all the overt signs that Mr. Marquez had a serious medical problem, a jury could reasonably conclude that the Defendants were aware of but indifferent to a serious medical risk. The Defendants now appeal.

II.    DISCUSSION

We review the district court's denial of summary judgment for qualified immunity de novo. *Fancher v. Barrientos*, 723 F.3d 1191, 1199 (10th Cir. 2013). When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff owns the burden of showing that the defendant violated a constitutional right that was clearly established at the time of the alleged violation. *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

It has long been established that the Fourteenth Amendment prohibits officials from failing to provide medical care to a pretrial detainee with a serious medical need of which they are aware. *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985). Thus, when a plaintiff brings such a "deliberate indifference" claim, he must demonstrate that (1) the deprivation was objectively sufficiently serious and (2) the defendants disregarded a known or obvious risk to the plaintiff's serious medical

needs. *See Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Mere negligence is not enough. *Id*. at 835.

Here, the Defendants do not dispute the first prong, that the alleged deprivation was serious. The Defendants instead argue that under the second prong, they were not *aware* that Mr. Marquez was suffering a serious medical condition. As such, they assert that they could not have been deliberately indifferent.

Before turning to the merits of the Defendants' appeal, however, we must first address the extent of our jurisdiction. When a district court denies qualified immunity to public officials, the decision "is immediately appealable under the collateral order doctrine to the extent it involves abstract issues of law," including the determination that the law the defendant allegedly violated was clearly established at the time of the alleged violation. *Fancher*, 723 F.3d at 1198. However, we lack jurisdiction to review the district court's factual conclusions, "such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008).

Most of the Defendants' arguments on appeal dispute the district court's interpretation of the facts. For example, the Defendants contend that the officers' conduct shown on the dash camera footage—including a discussion of a possible medical condition—demonstrates both their good faith and confusion about the source of Mr. Marquez's conduct. It does not, they assert, demonstrate their

awareness of a potential serious medical problem, as the district court found such evidence reasonably suggests. The Defendants also argue that the district court did not give proper weight to the officers' attempts to identify the source of Mr. Marquez's behavior as evidence they were unaware of Mr. Marquez's medical risk. They further claim the court misinterpreted evidence showing that the officers were not fully convinced Mr. Marquez was under the influence of alcohol or drugs. But these are all precisely the sort of factual disputes, not legal issues, that we are precluded from reviewing at this stage. *See Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997) ("[W]e must scrupulously avoid second-guessing the district court's determinations regarding whether [the plaintiff] has presented *evidence* sufficient to survive summary judgment"). We thus lack jurisdiction to consider these arguments.

To the extent the Defendants assert the district court's version of the facts are wholly unsupported by the record, such review is within our limited jurisdiction. *See Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) ("[W]hen the version of events the district court holds a reasonable jury could credit is blatantly contradicted by the record, we may assess the case based on our own *de novo* review of which facts a reasonable jury could accept as true." (internal quotation marks omitted)). However, we are not convinced the district court erred, for the record amply supports the court's version of the facts. The Defendants claim that because it is undisputed that Mr. Marquez did not request medical attention, that he was immediately transported to a hospital once his fever was discovered, and that his symptoms were

similar to those of an intoxicated person, their conduct cannot amount to deliberate indifference. But such a conclusion is contradicted by other evidence in the record. In light of Mr. Marquez's unmistakable physical and mental deterioration, the lack of any indication that drugs or alcohol were the cause, and the failure of the Defendants to act despite numerous opportunities to seek medical attention (violating detention center policies in doing so), a jury could reasonably conclude that they were deliberately indifferent to Mr. Marquez's serious medical risk.

Lastly, the Defendants argue that the district court improperly applied a narrow legal standard that was not "clearly established." Aplt. Brief-in-Chief at 25. The Defendants specifically contend that the district court applied a faulty standard in which the Defendants' failure to understand that Mr. Marquez needed medical treatment could still amount to deliberate indifference. But the Defendants incorrectly assume the truth of their premise that the Defendants did not understand Mr. Marquez's risk of harm. The question the district court decided was not whether their failure to identify Mr. Marquez's serious risk of harm amounted to deliberate indifference but rather, in light of the evidence, whether a jury could reasonably conclude the Defendants *did* understand the serious risk. The former is a fictitious legal question that the district court did not ask. The latter is a factual question that the district court answered affirmatively with record support.

The judgment of the district court is therefore affirmed.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge