FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 14, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CHARLES WHITE,

       Plaintiff - Appellant,

v.

BRIAN SANCHEZ,

       Defendant - Appellee.

No. 13-2078
(D.C. No. 1:12-CV-00517-WJ-RHS)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

Charles White filed a 42 U.S.C. § 1983 claim against Brian Sanchez for

malicious prosecution. The district court granted summary judgment in favor of

Mr. Sanchez and Mr. White now appeals from that decision. Exercising our

jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's judgment.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

The parties are familiar with the facts and the district court's order gives a detailed recitation that we need not repeat here. Briefly, on September 3, 2006, Mr. White's 7-week-old infant son, D.W., collapsed in his arms and stopped breathing. Although Mr. White was at home with his wife, he was alone with D.W. at the time the infant went into respiratory distress. Mr. White brought D.W. out to his wife and she called 911. D.W. was taken to the hospital by ambulance.

At that time, Mr. Sanchez was a police officer with the Albuquerque police department and was assigned to the Crimes Against Children Unit, Criminal Investigations Bureau. According to Mr. Sanchez's arrest warrant affidavit, D.W. had sustained "numerous injuries consistent with child abuse." Aplt. App. at 43. He further stated that he "spoke with the attending physician who stated the seven week old infant sustained three rib fractures which likely occurred within the past twenty-four hours and also sustained two rib fractures which likely occurred within the past seven to ten days. The infant also had subdural hematoma, brain swelling, and retinal hemorrhages." *Id.*

Mr. Sanchez's affidavit also included information he obtained from an interview with Mr. White in the early hours of September 4, 2006. Mr. Sanchez notified Mr. White of his Miranda rights before the interview and Mr. White consented to the interview. During the interview, Mr. White initially stated that he did not shake D.W., but that he may have hugged him too tight. Later in the interview, Mr. White admitted that he pulled the baby hard to him and the baby's

head hit his shoulder. He also admitted that he did shake the baby in some sense to try to elicit a response after the baby went limp in his arms, but he was not sure how hard he shook the baby. He further admitted that he could have squeezed the baby tight enough to break his ribs.

Mr. Sanchez concluded his affidavit by stating his belief "that sufficient evidence has been presented and probable cause exists for the arrest of Charles Franklin White for committing the crime of Child Abuse. Charles admitted to shaking his infant and acknowledged that by squeezing him hard, he may have caused the fractured ribs his infant sustained." *Id*. at 44. Later that day, an arrest warrant was issued for Mr. White's arrest.

A few weeks later, Mr. Sanchez and Mary Dentz, one of the nurses that had treated D.W., testified before the grand jury. The grand jury returned an indictment charging Mr. White with Child Abuse – Intentionally Caused Death or Great Bodily Harm; in the alternative, Child Abuse – Negligently Caused Death or Great Bodily Harm; in the alternative Child Abuse – Negligently Permitted Death or Great Bodily Harm.

On May 21, 2009, a jury acquitted Mr. White of all charges. Mr. White subsequently filed a state law claim for malicious prosecution but it was dismissed on statute of limitations grounds. He then filed the underlying § 1983 complaint for malicious prosecution.

Mr. Sanchez moved for summary judgment, asserting that he was entitled to qualified immunity because there was probable cause for Mr. White's arrest. In response, Mr. White argued that Mr. Sanchez falsified statements and omitted exculpatory evidence in order to initiate criminal proceedings against him. The district court agreed with Mr. Sanchez that there was probable cause to arrest Mr. White and granted summary judgment in his favor. This appeal followed.

II.

We review de novo the district court's decision on summary judgment. *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). "Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id*. (quoting Fed. R. Civ. P. 56(a)). Because Mr. Sanchez asserted qualified immunity as a defense, our review is different than when we review other summary judgments. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id*. (internal quotation marks omitted). For the following reasons, we agree with the district court that Mr. White failed to show that Mr. Sanchez violated his constitutional rights. Summary judgment in favor of Mr. Sanchez was therefore appropriate.

A.

In granting summary judgment, the district court concluded that there was no material fact suggesting that probable cause did not exist and therefore Mr. White could not satisfy all of the elements of a § 1983 malicious prosecution claim, *see Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) (identifying lack of probable cause as element of claim for malicious prosecution). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (internal quotation marks omitted). "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). Mr. White argues that the district court erred in granting summary judgment because there are factual disputes regarding the probable cause analysis.

Under § 1983, a law enforcement officer may violate the Fourth Amendment if he or she knowingly or recklessly omits information from an arrest warrant affidavit. *Id.* Mr. White asserts that there is a factual dispute as to whether Mr. Sanchez made false statements or omitted exculpatory evidence in his arrest warrant affidavit. It is undisputed that Mr. Sanchez obtained information about D.W.'s medical condition on the night of his admission to the hospital from Dr. Shannon and Ms. Dentz (although

- 5 -

the information from Ms. Dentz was relayed to him by another officer).  Mr. White contends that "the overwhelming weight of evidence showed that the medical information *provided* to Mr. Sanchez contradicted his contention that Mr. White had harmed D.W. on the evening of September 3, 2006."  Aplt. Br. at 12 (emphasis added).  But Mr. White fails to offer any evidence to rebut Mr. Sanchez's sworn affidavit about what information he received from the medical professionals about D.W.'s medical condition that evening.

In support of his motion for summary judgment, Mr. Sanchez submitted as evidence his arrest warrant affidavit, which he swore to be true to the best of his information and belief and signed under penalty of perjury.  In that affidavit, Mr. Sanchez stated that he "spoke with the attending physician who stated the seven week old infant sustained three rib fractures which likely occurred within the past twenty-four hours and also sustained two rib fractures which likely occurred within the past seven to ten days.  The infant also had subdural hematoma, brain swelling, and retinal hemorrhages."  Aplt. App. at 43.  Although Mr. White claims that the medical evidence actually showed that the injuries were not new and could not have resulted from any of Mr. White's alleged actions on the night of September 3, he has cited nothing in the record to show that this information was conveyed to Mr. Sanchez.  Mr. White's evidence consists of Dr. Shannon and Ms. Dentz's medical reports from September 4 and 5, as well as excerpts from interviews conducted by Mr. White's criminal attorney at a later date.  But neither the reports

nor the interview excerpts reveal what information Dr. Shannon and Ms. Dentz relayed to Mr. Sanchez on the evening of September 3 or in the early morning of September 4.

Moreover, although the reports do indicate that most of the injuries appeared to be old or chronic, as opposed to new or acute, Ms. Dentz did state in her report that D.W. had "bilateral hematomas of varying ages (*old and new*) with intraventricular hemorrhage with resulting severe head injury and coma." *Id*. at 172 (emphasis added).[1] Further, Dr. Shannon was asked during the criminal trial if it was correct that he "would not have told Detective Sanchez that [D.W.] had new rib fractures?" *Id*. at 46. In response, Dr. Shannon gave an equivocal answer, explaining, that "one of the initial radiology records on the chest x-ray showed—may have said something about old and new fractures," although he also explained that a later skeletal survey showed that the bone healing had already started to take place suggesting that they were older fractures. *Id*. at 46-47. Because there is evidence showing that the medical professionals initially thought that some of the injuries were new and there is no evidence to rebut Mr. Sanchez's sworn statement about the

---

[1]    The district court also relied on this evidence in its decision. In his opening brief, Mr. White contends that "Neither party raised this portion of Ms. Dentz's report during summary judgment briefing." Aplt. Br. at 19 n.15. That statement is not accurate as Mr. Sanchez did rely on this portion of Ms. Dentz's report in the reply to his summary judgment motion, *see* Aplt. App. at 204. In any event, Mr. White submitted Ms. Dentz's full report as one of his exhibits on summary judgment, *see id*. at 169-73; it is therefore part of the record to be considered by the district court and this court.

information he received about D.W.'s injuries[2], we agree with the district court that Mr. White has failed to create a factual dispute that Mr. Sanchez made false statements or omitted exculpatory evidence in his arrest warrant affidavit.[3]

We further agree with the district court that "[t]he existence of D.W.'s injuries, regardless of the age of the injuries, together with Plaintiff's statements made to Defendant Sanchez during the police interview, constituted probable cause for an arrest for child abuse." *Id.* at 262-63. Even if Mr. Sanchez was wrong about the timing of the injuries, it is undisputed that Mr. White was one of D.W.'s primary caregivers, and that D.W. had suffered injuries that were consistent with child abuse. The existence of those injuries, together with the admissions Mr. White made during the interview (for example, that he squeezed the baby hard enough to break his ribs), were sufficient to establish probable cause to arrest him for child abuse.

---

[2]     Mr. White has not explained why he could not offer into evidence affidavits from Dr. Shannon and Ms. Dentz stating exactly what they told Mr. Sanchez after D.W. was admitted to the hospital.

[3]     This case is therefore distinguishable from *DeLoach v. Bevers*, 922 F.2d 618 (10th Cir. 1990), which Mr. White cites in his reply brief. That case also involved an allegation of child abuse that was ultimately determined to be unfounded. But in *DeLoach*, there was evidence that the defendant police detective interviewed a medical expert who opined that it was more likely one of the deceased child's parents who dealt the fatal blow, rather than the babysitter who was being investigated for the death. *Id.* at 621. The defendant failed to make a record of this interview or to disclose its exculpatory nature in her arrest warrant for the babysitter. *Id.* We have no such evidence of any intentional omission in this case.

B.

Mr. White also asserts that the district court erred in considering the trial testimony from two doctors, Sean Mullen and Elliott Crow, in granting Mr. Sanchez's motion for summary judgment. Dr. Mullen and Dr. Crow did not speak with Mr. Sanchez on the night that D.W. was admitted to the hospital, but they did provide care to D.W. and were familiar with his injuries. Their testimony indicated that it was their initial impression that some of the rib fractures and brain injuries could have been new injuries.

As we have noted above, the age of the injuries is not dispositive of the probable cause determination, and there was evidence from Dr. Shannon and Ms. Dentz that indicated an initial impression that some of D.W.'s injuries were new. Accordingly, we need not decide whether the district court abused its discretion in admitting this other medical evidence because any error would be harmless and would not affect the ultimate disposition of the summary judgment motion.

III.

For the foregoing reasons, and for the reasons more fully set out in the district court's thorough and well-reasoned memorandum opinion and order, we affirm the district court's judgment.

Entered for the Court


Wade Brorby
Senior Circuit Judge

- 9 -